Good evening, ladies and gentlemen. On behalf of my colleagues on the Court, I'm delighted to welcome the Governor and the leadership of the members of the General Assembly to our oral argument this evening. I thank the attorneys who are involved in the case for being willing to be here this evening with us to argue this case. The Court selected this case for argument before you. We thought it would be of particular interest to the members of the General Assembly because it involves the constitutionality of one of the statutes that you passed. So it's your opportunity to see the third branch of government actually in session and doing the people's business. So at this time I would like to call case number 118255, People of the State of Illinois v. Jermaine Richardson. Are you ready to proceed? Good evening, Your Honors. May it please the Court. Counsel. I am Assistant Attorney General Gopi Kashyap on behalf of the People of the State of Illinois. Recently, in 2013, the legislature amended the Juvenile Court Act, raising the age of juvenile jurisdiction to include most 17-year-old alleged felons within its purview. That change altered the longstanding system in Illinois that had previously treated 17-year-olds as adults. To implement this change, the legislature enacted a savings clause, which prospectively applied the amendment to offenses occurring on or after the effective date of January 1, 2014. Defendant here committed and was indicted for alleged felonies that occurred prior to the effective date of the amendment, and therefore he is ineligible for juvenile treatment. The circuit court here found that the savings clause, by precluding the amendment's application to defendant, violates the federal and state equal protection clauses. The defendant here fails to overcome the strong presumption that makes the savings clause constitutional. First, defendant fails to show that the clause was created by the savings clause. 17-year-olds who commit their alleged offenses before the effective date and those who commit their alleged offenses after the effective date are similarly situated. The members of each class here were on notice. At the time that they allegedly committed their offenses, they were subject to different statutory schemes. Like in Ramsey, the savings clause here treats defendant in the same manner as all other 17-year-olds who committed their alleged offenses prior to the effective date. The amendment simply does not apply to any of them. So you're contending that the equal protection clause doesn't come into play at all? Yes, Your Honor, because defendant fails to meet the threshold requirement, which is that he is similarly situated to that the classes created by the savings clause are similarly situated. That he is similarly situated to offenders who commit their alleged offenses after the amendment's effective date. And that finding, that he has failed to meet the threshold requirement, ends the inquiry. But even if this Court were to find that defendant is similarly situated, the amendment here, excuse me, the savings clause here is rational. Defendant agrees that the line should be drawn somewhere. That agreement ends this Court's inquiry. As the United States Supreme Court has stated time and again, the precise coordinates of line-drawing efforts like that at issue here are matters for the legislature and virtually unreviewable. Moreover, defendant's contention that, quote, the more rational line that the legislature should have drawn at finality, concedes that the chosen line at the date of offense was rational. Each line, finality or date of offense, has its advantages or disadvantages. While defendant believes the optimal line is finality, the legislature was not required to choose the perfect line or the superior line. It was only required to choose the rational line. And here, there are a number of rational lines the legislature could have drawn. While finality is one of them, so too is the date of offense, which is what the legislature did draw. There are many factors to consider. The legislature had many factors to consider in deciding how to implement this change. It chose to balance those competing interests in favor of the date of offense as opposed to finality. And that balance is completely rational, particularly because criminal statutes customarily use the date of offense as a line to comport with basic notions of fair notice. Let me ask you, your opponent, the appellee, has directed us to a series of statements made by legislators when this bill was being debated. And she points us to statements that the legislators were concerned with serious policy issues, treating children as children, looking at recent science of brain studies, and the larger concern about the rehabilitation of juveniles and the reduction of recidivism. Should we consider those policy issues in factoring into this constitutional argument? No, your honor, because the issue here is not whether the amendment is rational. It's whether the savings clause is rational. And so the legislature, of course it was rational for the legislature to take into account all of the changes, or all of the brain science cited by your honor, in enacting the amendment. However, the question here is whether the legislature could enact the amendment and apply it prospectively rather than retroactively. And so the question is whether the savings clause, which does that, is rational. And the savings clause here furthers legitimate state interests. For example, defendants draws the line at finality and makes it so that the amendment should be applied retroactively to all pending cases, whether they are pretrial, midtrial, posttrial, in the circuit court, in the appellate court, in this court, or in the United States Supreme Court. That would require all those cases pending to restart. That would create complex legal and administrative issues, such as requiring a new set of attorneys. It would lead to questions regarding the effect of prior proceedings on the new juvenile proceedings. It would raise questions about whether the juvenile protections were afforded at the time of arrest. There would be double jeopardy and speedy trial complications. And all of these concerns, the legal and administrative questions that could arise by applying the amendment retroactively, this court stated in Grant and Ramsey were legitimate and rational. And certainly the legislature rationally could have decided to make the amendment prospective to avoid these complexities, which would disrupt and delay ongoing cases. Furthermore, the line of finality that defendant draws creates negative incentives for defendants to manipulate the system and delay the system. This amendment was approved by the governor in July of 2013. There was a good six months before its effective date. And so defendants within that time frame could have delayed their cases to get the benefit of the amendment, contrary to what the legislature intended. And so the legislature could have decided that it did not want to encourage such delay tactics, particularly where the bright line rule at the date of offense is not subject to manipulation and is chosen by the alleged offender at the time of the offense. Is there any evidence of the legislature's intent specific to the savings clause? The legislative history is silent on the reason that the legislature enacted the savings clause. But that makes no difference in equal protection analysis. The question is whether there is any conceivable basis for the legislature's actions. In determining whether there is any conceivable basis, the basis can be supported by rational speculation. There needs to be no empirical data. It's just whether there are reasons. And I've cited many reasons why the legislature could have chosen to draw the line at the date of offense. Ms. Kashub, is there any case in which held this type of savings clause unconstitutional? My research has found none, Your Honor. This type of savings clause has been upheld by the courts across the country. There is maybe one case in California in which a savings clause was held unconstitutional, but it dealt with pre-custody credits. And the court in that case said that because it was simply a recalculation effort, that there was no rational reason not to apply the amendment retroactively. That's not the case here, Your Honor. There are many administrative issues with applying the amendment retroactively. There's a lot of burdens on the system. And the legislature here was perfectly rational in choosing to implement the reform gradually. It's important to note that this court has upheld savings clauses in Grant and in Ramsey, and more so, where the legislature was silent on the question of prospectivity or retroactivity, this court has applied the general savings clause found in Section 4 of the Statute on Statutes and applied changes in legislation prospectively only. So, for example, in Gleason, this court applied the general savings clause to find a particular statute prospective only. That statute made it so that the person who had committed the crime at the time they committed the crime was convicted. However, after conviction, the crime was no longer a crime. Yet, this court applied the general savings clause and found that the conviction should be upheld. Similarly, in Bilderbach, this court applied the savings clause to apply an amendment to a statute prospectively. In that case, it preserved a conviction, which was a felony, and the defendant had committed the crime, and before he was convicted, the law had changed in order to reclassify the crime as a misdemeanor. Yet, this court said that at the time that the defendant committed his crime, it was a felony, and therefore, the general savings clause applied and applied that prospectively. To hold that this is an equal protection violation, this savings clause expressly made with respect to this amendment, this violation of equal protection would effectively overrule those cases. It would effectively overturn the general savings clause as well. Defendant's line at finality creates its own inequities. In fact, the line that the legislature drew up at date of offense is simply more equitable. The line at finality makes it so that pre-effective date offenders themselves are treated differently based solely on when their cases become final. So a particular offender, it depends on how quickly his case moves through the system. And as we know, in Illinois, there are many counties, some of which move quicker than others because of their size. And so that would create, so two defendants who committed their crimes on the very same date would receive disparate treatment if the line was drawn at finality. So this line instead makes it so that everyone who commits their alleged crimes before the effective date are all treated the same, particularly where they were on notice at the time they committed their alleged crimes as to where they would be tried. Finally, Your Honors, the legislature's decision to enact this savings clause and implement this reform gradually, one step at a time, and to lessen the immediate impact on the system was rational. And many courts, including the United States Supreme Court, have held that that is of legitimate state interest. Thus, the savings clause furthers a number of legitimate governmental interests. Unless this court has further questions at this time, I will do my report. Thank you. Good evening, Your Honors. Counselor. May it please the Court, I'm Sherri Silverne. I'm with the State Appellate Defender, and we represent Jermaine Richardson in this case. Ms. Silverne? Yes, sir. You didn't get much out of your mouth there, did you? No. Jump right in.  Our argument is that all 17-year-olds that commit offenses are similarly situated, period. There are various statutes in the Juvenile Court Act that would allow for a transfer from the juvenile court into the adult court. There's the gang transfer. There's other transfers available. In this case, Jermaine was 17 years old when he committed this offense, alleged to commit this offense. He was almost 18 years old when he was charged. He wasn't charged until 2013, and then his attorney filed this motion in 2014. And the argument has been, and it continues to be, that the fact that he is a 17-year-old who has committed a felony offense, alleged to have committed a felony offense, that's what makes him similarly situated. So it's inconsequential, then, that the defendant was on notice that he would be prosecuted as an adult. Actually, is he really on notice? There's always the possibility that the prosecution could lower the charge and he would wind up in the juvenile court. So I guess there was a notice situation, but mostly he was on notice that he committed a felony offense. And that's what the question was. There was the conduct. This court has said in People v. PH that there's one circuit court. There happens to be a juvenile division of the circuit court and an adult division of the circuit court, and that the transfer from the juvenile to adult or adult to juvenile is a procedural step. And toward that end, the counselor mentioned the statute on statutes, procedural changes can be applied retroactively. PH said that. So this is one of those cases where it could be applied retroactively. But I'd like to actually comment on a couple of other things that were in the state's brief. At page 4 of their brief, and counselor said it again today, that it is the defendant's contention that retroactivity, that this change in the statute should apply retroactively to all pending cases. And today, counselor added that the pending cases included everything up to possibly going to the United States Supreme Court. That has never been the contention, ever, in the circuit court or on this appeal. In fact, they say that, if I may quote their brief, that the defendant's contention is that the IJJC report, which we relied on in our brief, quote, favored the amendment's retroactive application, and then they go on to say that that contention is factually and legally incorrect. Well, it is. It is factually and legally incorrect. They don't cite our brief for anywhere that we made that contention. We never said it. I even ran a word search in preparation for today just to see if I put that in there. The only time I used the word retroactivity was when I was citing another case or when I was quoting the state. We never have claimed retroactivity. Our line, we all agree that there has to be a line drawn somewhere. Our line is at final judgment, and that means conviction and sentence. All of the cases that the state has relied on in its brief, all of them concern cases in which there has been a conviction, and it is after that conviction that the defendant or the affected party is trying to apply some subsequent change. And in every case, it's been denied, rightfully so. You have to respect the finality of the judgment, and that's what we have argued all along. And just as an example of that, they cite our copy. Back to that argument for a minute, that basically that the legislature may not line draw in the fashion in which they have with the savings clause, right? We're saying there's no rational basis for it. Correct. Do you have any case support for that at all? Unfortunately, this could be the first case, and I'm hoping that Your Honors will approve. That's a no? That is a no, yes, sir. The rational basis test is a very difficult test to meet, and it's not been very successful. But I would go back to what I started to say, that the cases that the state relies on are cases where they've been convicted. Arellano is a Colorado case where the conviction was in 1969. They tried to apply some sentencing changes that came into effect in 1971, but his case was completely over, and the Arellano court relied on the finality of the judgment. Derrick v. Derrick was a marital case. It was a modification of marital support, and they tried to use some changes to the determination of the amount of support. And again, it was finality of judgment. Rondin v. State is the same thing. Maria v. Cowley, 10th Circuit case, ex parte Zimmerman, Alabama. All of these are out-of-state cases. They even quote Landgraf v. USI Film, which is a United States Supreme Court case. Again, that was a sexual harassment case. Landgraf lost in the lower courts, and she tried to bring another action that would allow her to get compensatory and punitive damages, and I think attorney's fees, based on changes that occurred after her judgment was entered. But it comes down to all of those cases had finality of judgment. This case does not. This is a pending case. Excuse me. I go back to Ph. Your Honor said that since it is a procedural step determining which court to go into, that this could be applied retroactively. If you do choose to use the word retroactively, we are still saying case is pending on appeal. And as to the rational basis, Your Honor asked about the policy considerations. They're all part and parcel of this, and that's why we keep harping on them, if you will. Those policy considerations that were listed by the legislature. In the legislative debates of 2007, when the first amendment to Section 5120 were going on, that's when the members of the legislature all talked about the effect on the administration of justice, the effect on law enforcement, the effect on the juvenile rehabilitative systems that would be in place. And they talked about this huge influx of kids who were going to be put back in the juvenile system. The IJJC report showed that none of those fears came true. So when the legislature was debating this in 2013, in April, I think it was, April or May, their concern was no longer any of those considerations because they were already decided. The misdemeanor, juveniles charged with misdemeanors, were already going on. The juvenile system was all set up for it. None of that had to be a consideration at this point. The only consideration at this point, and it was Representative Bellock and Representative Curry and some other ones that all said the same thing, our consideration is the kids. And if your consideration is the kids, what's the point in waiting? Why should it be delayed if your consideration is that the kids need to be protected? The kids need to be in the juvenile court system. There is no rational basis for that second paragraph that would delay implementation. I noticed that the trial court in your brief, that you focus really on the substance of the legislation rather than the savings clause itself. How do you address the state's argument that it's the savings clause that really has to relate to a legitimate government objective? She mentioned a bright-line application to avoid gamesmanship, delay, legal snafus, avoid administrative costs. Isn't that what we're dealing with, whether there's a rational relationship to the savings clause, not the substantive effect of the bill? But I go back to what I said about the debates that occurred in 2007. When Section 5120 was amended to allow 17-year-old juveniles charged with misdemeanors, that's when the legislature did consider all those things. If you look at those debates, the state was nice enough to include all of those debates in their brief in the appendix. They go into great detail about the administrative costs to different counties. They go into law enforcement. At that time, there were law enforcement agencies and states' attorneys' offices who were opposed to making this bifurcated system. And at that time, they talked about holding off for six months. In 2007, when they made that change for misdemeanors, they held off for six months before it was implemented. This time, with this change that does away with what is a bifurcated system that the IJJC condemned, really, in their report, that's when they just jumped to that this is the kids now. It is no longer these other considerations. I believe it was Representative Bellock who said, financial cost is not a concern, so that the second paragraph, that savings clause, there is no rational basis anymore. It was already decided. We don't need to consider that now. Judge Creswell's ruling was correct. This does violate equal protection. He's a 17-year-old, Jermaine is a 17-year-old kid who, like any other kid charged with a felony, should be in the juvenile court system. There's no rational basis. There's absolutely no rational basis to have delayed the implementation of what is a logical, well-thought-out, researched, supported by case law and scientific law change to the statute. We're asking your honors to affirm. I take it there was no legislative debate on the effective date of the change? This time around, no. Okay. Then can we assume that the legislators in fashioning this date and the other debates that were mentioned took all of that into consideration, the concerns, the dates, the times, the good of the children? Or can we not assume that? The only thing that was flatly stated on the floor was that this is for the kids. They said that this is no longer a cost issue, this is no longer... The initial change happened back in 2007 and was effective in 2010. The kids, that's the issue. I don't know if that answered your question. Now you keep talking about deferring the date of implementation. Would you explain a little bit more about what you mean? You're saying that it should have become effective the minute it was signed by the governor? Yes. That is exactly right. And is that because it involves juveniles? Because it involves juveniles and because of what the legislators said during the floor debates, that this involves the kids. And if it's that important to help our kids, there's no reason to have a second paragraph that says, oh, wait, we'll wait six months. But the legislature put that in during the time of their debates and when they fashioned the law. Should that carry any weight with us? That's what the whole question is here, Your Honor. If there's no more questions. Thank you. Your Honor, this legislation, amending the Juvenile Court Act to raise the age of juvenile jurisdiction, was introduced in the legislature with the savings clause. It was not debated by the legislature. That is exactly what the legislature had done with the misdemeanor amendment. And that had been successful for the legislature. Of course, it was rational for the legislature to think that where the misdemeanor amendment was successful, that where it applied prospectively, that they should do the same here. I'd like to go back to counsel's point about finality. On page 21 of defendant's brief, he had stated that the line should be at finality. We interpreted that as final judgment, which occurs when cert is denied or decided by the United States Supreme Court. It seems now that his line is at disposition, essentially, which is what the circuit court had held. But that doesn't change things. You still have to restart the cases in juvenile court, and that still is a burden on the court systems, that it still incentivizes delays, it still allows defendants to manipulate the system. All of the rational reasons that I discussed earlier apply equally even where we're talking about a line being at judgment. One minute, Your Honor, if you don't mind. The thrust of defendant's argument is that these are children, and it is unfair to treat this defendant differently, because he was 17 at the time that he committed his offense. But whether the choice was fair, wise, or correct, are just simply not proper inquiries for an equal protection analysis. This is particularly true for a savings clause, like the one here that accompanies an ameliorative amendment. These clauses always appear unfair because they deprive the pre-effective date defendants of the ameliorative benefits of the change. If the savings clause violates equal protection, that would eradicate the long-established legislative power to enact such clauses and stifle reform. Indeed, Your Honors, this line that is drawn by the legislature is no less unfair than the line of majority. As the commission's report on page 19 notes, the psychosocial maturity and basic intellectual abilities of individuals do not merge until their mid-20s. So that means that our society's decision to draw the line of majority at 18 also does not necessarily comport with the brain science. So, but yet, the legislature here decided... I'd like to note that counsel was discussing that 17-year-olds are 17-year-olds, and so that's why this defendant is similarly situated to defendants who committed their offenses post-effective date. But the Juvenile Court Act distinguishes among 17-year-olds. It treats some 17-year-olds as adults from the beginning, such as those that allegedly commit first-degree murder, aggravated criminal and sexual assault, and some other crimes. And so 17-year-olds are not 17-year-olds. They're not all the same, because they each have noticed that different provisions will apply to them. Finally, Your Honors, I'd like to conclude by just saying that the United States Supreme Court has stated that all changes must have a beginning, and the Equal Protection Clause does not forbid discriminating between the rights of an earlier and a later time. The legislature's express decision to enact a start date for this amendment and apply it only to future offenders conforts with basic notions of fair notice and avoids disruption, delay, and the potential for prejudice. It is therefore rational. Unless this Court has further questions, the people ask that this Court reverse the Circuit Court's judgment and remand for further proceedings. Thank you. Case number 118255, People of the State of Illinois v. Jermaine Richardson, will be taken under advisement as Agenda Number 10. Ms. Koshyp and Ms. Silbern, thank you for your arguments this evening. We appreciate them very much. You're excused at this time. To all those that are guests today, and certainly to the attorneys, we invite you to have some coffee and cookies in the Appellate Court Ceremonial Courtroom, and the Court will join you all shortly. Mr. Marshall, the Supreme Court stands adjourned until 9 a.m. in the morning.